# GEORGE P. BENJAMIN *vs.* BRUCE & COOK et al.

*Contracts—Mutuality of Obligation—Agreement to Sell Goods Exclusively to One Person—Agreement Not to Sell to Other Parties at Lower Prices—Assignment for Benefit of Creditors—Provable Claims—Liquidated Damages.*

In an executory contract, unless both parties are bound, neither is bound, and an executory contract which imposes an obligation upon one party alone is void for want of mutuality, there being no consideration for the promise of the party so assuming an obligation.

But an agreement invalid for want of mutuality when made may become valid when performed by the party not bound by its terms to perform, such performance being equivalent to the acceptance of an offer.

A contract by which A. agrees to sell at the lowest price all the goods made by him to B. with a few designated exceptions, and which does not bind B. to order any goods, is void for want of mutuality.

Where A. agrees to sell goods to B. for the same price at which he sells similar merchandise to any one else then an overcharge by A. entitles B. to demand a rebate to the extent of the excess, and the claim is for a fixed amount. But when A. merely agrees not to sell to third persons at a lower price than B. is charged, then a violation of this agreement by A. does not entitle B. to claim a definite sum, but only gives him a right of action for unliquidated damages.

An agreement was made between a manufacturer in Baltimore and a general agent in New York, by which it was provided that all goods made by the former should be sold through the agent except those sold to certain designated parties, and what the manufacturer might himself sell in Baltimore ; that the goods were to be shipped upon the agent's orders at bottom prices, and subject also to a commission of five per cent., and all orders from parties outside of Baltimore were to be referred to the agent. Afterwards the manufacturer also agreed to allow the agent a commission or trade discount of five per cent. below the lowest prices at which he sold to other parties, except to designated firms, and agreed not to sell to these firms for less than the agent was charged. The manufacturer made an assignment for the benefit of creditors, and the agent filed two claims as creditor, in one of which he alleged that the manufacturer had sold goods to certain parties for less than he was charged, in violation of the agreement by which he was to be entitled to the lowest prices, and he claimed the difference between the amounts paid by him and that paid by those parties. The other account was for commissions on sales made by the manufacturer himself in the

territory within which the agent alone was entitled to make sales. *Held*,

1st. That since the contract imposed no obligation upon the agent to order any goods, it was lacking in mutuality, and except in so far as executed was not binding on the manufacturer.

2nd. That assuming, however, the validity of the contract, the claim of the agent for commissions on sales made by the manufacturer in violation of his agreement not to sell within a certain territory, is a claim for unascertained damages, since the contract did not provide that the agent should be entitled to commissions on sales made by the manufacturer in violation thereof, and consequently the agent is not entitled to prove for such claims against the fund in the hands of the assignee for the benefit of creditors.

3rd. That the manufacturer's violation of the contract not to sell to other parties for less than he sold to the agent did not give to the agent a definite claim for the excess charged him, but merely a claim for unliquidated damages, not provable as a debt in this case.

Appeal from an order of Circuit Court No. 2, of Baltimore City (STOCKBRIDGE, J.), sustaining exceptions to the claim of George P. Benjamin against the trust estate of Henry Evans, Jr.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, ROBERTS, BOYD and PEARCE, JJ. (Jan. 21, 1898).

*John N. Steele* and *John E. Semmes* (of *Steele, Semmes, Carey & Bond*), for the appellant.

The appellant claims: *First.* That he is a creditor of Evans to the amount of 5 per cent. on all sales between January 1, 1886, and September 10, 1894, made directly by Evans, except sales made in Baltimore and sales made to Morphy, in New Orleans. That this was the compensation to be paid him for his services as general agent in advertising and promoting the sales of Evans' goods. That Evans received the benefit of his services, and that this claim is in the nature of a salary.

*Second.* That he is a creditor of Evans to the amount of 5 per cent. on all sales made directly by Evans (except sales to Conklin and Butler) in what was known as the

northern territory, consisting of all the United States, save that portion east of the Mississippi, south of West Virginia and the Ohio River, between September 10th, 1894, and April 26th, 1896, when the agreement of September 10th, 1894, was terminated by notice.

*Third.* That he is entitled as a creditor to a rebate on all sales made direct to him at a higher rate than sales made to the parties named in Evans' letter of September 25th, 1894, during the same period, it having been expressly agreed that the prices to Benjamin should be as low as the prices given to the above parties; that the books show that he was overcharged in the amount of $4,314, above the contract price agreed upon. Evans sold to Benjamin, May, 1895, and February 20th, 1896, goods invoiced to him at $25,397.38. It is admitted that he sold to C. A. Conklin, between May, 1895, and February 20, 1896, goods of the same character at a price which netted Conklin $21,037.81.

I. The first position of the exceptants is, that the claims of Benjamin are claims for unliquidated damages. It can hardly be successfully contended that a claim for a fixed commission upon a definite sum is not a debt, recognized as one to be paid under a deed of trust for the benefit of creditors. If Benjamin was to have been paid a fixed salary for his services, certainly a balance due him would be a debt, and would entitle him to his claim as a creditor. If his services are to be paid for in the shape of a commission on sales, instead of a fixed salary, it seems hardly possible that, because it is necessary to estimate the commission of 5 per cent. (the amount agreed upon in this case) on such sales, he is not entitled as a creditor to compensation for his services, or that the necessity for a simple calculation should defeat his claim.

The agreement fixing the price to Benjamin at the same price as goods sold to Conklin, seems to be definite enough, if the claimant can show that he has been charged more for these goods than the price at which the same character of goods were sold to Conklin during the same period, it would

seem that he should recover the difference, and that this difference would be a fixed and easily ascertained amount. The facts show that in the month of May, 1895, Benjamin purchased goods of Evans, to be delivered up to February, 1896, amounting to $25,347.78 ; that Conklin purchased the same kind of goods to the amount of about $50,000.00, from Evans, in May, 1895, to be delivered during the same period, at a lower price, which, if charged to Benjamin, would have made the amount due from him on said goods only $21,032.86, making a difference of $4,314.92. If the price given to Benjamin had been an error, and he had been by an oversight overcharged $4,000 more than was agreed upon, it would seem to be very clear that he would be entitled to recover this amount from the trust estate of Evans. If such a claim would be allowed, is it possible that there would be a different principle, where, as in this case, it can be shown there was an intentional overcharge of the same amount in excess of the contract price.

There seems to be no doubt that claims which might technically be considered claims for damages have always been allowed to participate in the trust fund under a deed for the benefit of creditors, where the claim arose prior to the assignment and was capable of adjustment or liquidation. *Robinson's Appeal,* 63 Conn. 290 ; *Bacon* v. *Thorp,* 27 Conn. 261; *Sweatman's Appeal,* 150 Pa. St. 369 ; 3 *Amer. & Eng. Enc. of Law,* 2nd ed. 138. In the case of *Lothrop* v. *Read,* 13 Allen, 294, a contract was made to deliver a certain number of tons of coal at eleven dollars per ton. Five tons were delivered. The insolvent debtor refused to deliver the remaining tons. A claim was approved and allowed for the difference between the contract price and the market price. This case and the ones immediately to be quoted gave an interpretation to the word " debt " used in the statute. The same word, however, is used in the deed. In defining what is meant by the word " debt " in the statute, the Court says in *Gray* v. *Bennett,* 3 Met. 522, that the word " debt " is of large import, and in its popular

sense includes all that is due to a man under any form of obligation or promise. In *Brown* v. *Lamb*, 6 Met. 203, the Court says: " The word ' debt ' in the statute is used in its broadest latitude." A claim was allowed for wood destroyed by fire, and the Court says: " I see nothing which can be open to dispute, except the mere question of value, and it is, I think, sufficiently proven that there is a market price governing the value of timber." In the matter of *Ives*, 25 Abb. N. C. 63, the question turns upon the language of the deed. The Court holds that all the " debts and liabilities " cover unliquidated damages, debts or demands. See also *Casualty Ins. Co.'s case*, 82 Md. 570; *Davis* v. *Gemmel*, 73 Md. 540.

II. The necessity of the mutuality of the obligation of (an *executory*) contract is conceded. 1 *Addison on Contracts*, 35 (8 ed.) " The mutuality of obligation is the very essence of all contracts founded upon mutual promises; hence it follows," observes Pothier, " that nothing can be more contradictory to such an obligation than an entire liberty in either of the parties making the promise to perform it or not, as he may please. An agreement giving such a liberty would be absolutely void for want of obligation," *i. e.*, so long as the contract remains wholly executory and nothing had been done under it. The agreement of 1885, as set forth in Benjamin s letter, contains no recital as to what Benjamin is to do in consideration of the commission of 5 per cent. This might be important, if we were dealing with an *executory* contract, but Benjamin's testimony and subsequent letters show that he advertised Evans' goods through his travellers; that the result of his efforts was to double the sale of the goods, and that the contract was acted upon by both parties for about nine years. The claims of Benjamin are, therefore, based upon an *executed* contract, and the excepting creditors come forward and set up the defence that, although it is true that Benjamin did do the work and Evans received the benefit, the written contract did not compel Benjamin to do anything. The contract is, it is claimed,

therefore unilateral, and Benjamin cannot recover for his services.    A complete answer would seem to be that whether Benjamin was, or was not, bound under the contract to do certain work, he actually did the work with the consent and approval of Evans, who received the benefit of the same, and who is, therefore, responsible for the compensation agreed to be paid, and who, in the absence of a contract, would be liable for what the services rendered were reasonably worth.    But the position of the appellees is untenable, and has been so determined by our Court of Appeals.    *Eq. Endow. As'n* v. *Fisher,* 71 Md. 430 ; *Balto. Brewing Co.* v. *Callahan,* 82 Md. 106.

III.    What has been said in the preceding paragraph applies also to the third position of the appellees, that is, that the contract is void because it is in restraint of trade.    The appellant is not now seeking the specific performance of a contract, but is endeavoring to recover for services rendered under a contract recognized during its whole life as valid and binding by the other party thereto, and under which, as already stated, the other party has received the benefit of the appellant's work.

The case at bar is a contract for the employment of a general sales agent, where the manufacturer himself controls the prices, and the only obligation imposed upon him for the services rendered by his agent is the payment of 5 per cent. on all sales, with certain exceptions.    If the manufacturer found that this obligation bore heavy upon him he could terminate the agreement on three months' notice.    It is not seen how the question of the validity *vel non* of the contract, as being in restraint of trade, can arise in this case, because, as a matter of fact, there was nothing whatever in the contract to restrain or prevent Evans from making sales wherever he pleased ; but, if during the life of the contract, he made direct sales in Benjamin's territory, he was then obliged to pay Benjamin a commission of 5 per cent. upon such sales.    This was the understanding of the parties, and was a perfectly clear and just arrangement.

Benjamin devoted his time to creating a market for the goods of Evans. He instructed his travellers to solicit customers, and he paid for their services. If Evans was not, under the terms of the agreement, obliged to pay a compensation of 5 per cent. on all sales, there was nothing to prevent persons, to whose attention Evans' goods had been brought by Benjamin, from purchasing direct from Evans without communicating the fact that Benjamin had been instrumental in procuring them as customers. But it is objected that this commission was to be paid upon *all* sales, except sales made to the Baltimore trade, or to Morphy, in Louisiana ; and that the territory was too extensive. So far as appears from the record, no other or greater territory is covered by the obligation to pay the commission than was covered by the solicitors or travellers of Benjamin. The test of the validity of a contract of this character is its reasonableness ; and its reasonableness is determined by ascertaining whether it contains any restriction upon the defendant which was not beneficial to the plaintiff, or which was unnecessary for his reasonable protection. In the case of *Watertown Thermometer Co.* v. *Pool*, 51 Hun. 157 : Held, that a restriction upon the right of vendors to engage in a manufacture, which they have sold to another person, would not be held void as in restraint of trade, even though it extended over the *whole of the United States.* "The restraint, though general, is at the same time co-extensive only with the interest to be protected and with the benefit meant to be conferred; it imposes no restriction upon the defendants which is not beneficial to the plaintiff, or which was unnecessary for its reasonable protection."

In the case of *Carter* v. *Alling*, 43 Fed. Rep. 208, a contract between a manufacturing corporation, whose business extends throughout the United States and Canada, and one of its traveling salesmen, whereby he agrees not to serve *any business competitor* of the corporation for three years after leaving its service, is held valid. The modern agencies of commerce have enlarged the field for the manufacturer

and salesman too, even beyond the limit of the continent; and to whatever extent a manufacturer or dealer has by his energy and enterprise made a market for his wares, to that extent he has the right to protect his business, by contracts, like the one under consideration. In the case of the *Diamond Match Co.* v. *Roeber*, 106 N. Y. 473. A covenant by a vendor that he would not engage in the manufacture or sale of matches, except in the service of the purchasing company, within *any of the States or Territories, except Nevada and Montana*, held valid. " If a man's business extends over a whole continent, does public policy forbid his accompanying the sale with a stipulation for restraint coextensive with the business which he sells ?" See also on the question of reasonableness : *Hitchcock* v. *Coker*, 6 Ad. & E. 438 ; *Horner* v. *Graves*, 7 Bing. 735 ; *Brewer* v. *Marshall*, 19 N. J. Eq. 547. It is too well known a fact to burden the record with testimony to show that manufacturers throughout the country have found that the expense of employing travellers and the difficulty of keeping fully posted as to the solvency of customers has resulted in the employment of general sales agents for their product, who, representing as they do a number of manufacturers of different articles, are able to send travellers throughout the United States to advertise the various goods represented by them, and thus divide the expense and at the same time obtain the necessary information as to the solvency of customers.

*M. R. Walter* and *J. Hemsley Johnson* (with whom were *Harry N. Abercrombie* and *James E. Ingram* on the brief ), for the appellees.

I. *As to appellant's commission account.* This claim was properly disallowed because : 1. The alleged agreements were not valid contracts, being unilateral, lacking in mutuality and without consideration. The alleged agreement of December, 1885 (and for all practical purposes that of September, 1894, was the same), provided : 1. That all

goods manufactured by Evans, with the exception of those
sold and delivered by him to the Baltimore trade, or con-
signed to D. E. Morphy, of New Orleans, were to be sold
through Benjamin.   2. That all goods were to be shipped
by Evans upon Benjamin's order only.   3. That all goods
ordered were to be *billed to Benjamin* and at bottom prices,
payable by him in sixty days.   4. That upon all sales made
to or through Benjamin, the latter was to receive, in addi-
tion to a certain stipulated discount for anticipation of pay-
ment by him, a commission (further discount) of 5 per cent.
5. That goods sold to the Baltimore trade were not to be
sold lower than the price at which they were to be billed to
Benjamin, and not to be subject to any discount or allow-
ance except a cash discount not exceeding 5 per cent.   6.
That the consignments to Morphy, of New Orleans, were
not to be of such magnitude or settled for at such price as
would interfere with the regular trade, but should be of the
same general character as theretofore.   7. That all orders
and inquiries as to prices, &c., from parties outside of Bal-
timore were to be referred to Benjamin and all acknowl-
edgments of orders, replies and quotations were to be made
by him.

Under this arrangement Benjamin did not agree to do
anything.   He did not obligate himself to buy or sell, or
to perform any service.   He was at liberty to send orders
or not, as he pleased.   Evans agreed not to sell his goods
anywhere except to the Baltimore trade, and to one party
in New Orleans.   He further agreed that when Benjamin
ordered goods he would fill the orders and would bill them
to Benjamin, not at the price at which Benjamin had sold
them, but at the *bottom price* then prevailing.   Benjamin
was under no obligations to take any goods—not a cop-
per's worth.   Evans had no control whatever over the trade
to be sold—that Benjamin reserved to himself exclusively.
Benjamin was at liberty to sell at whatever price he saw fit,
and the difference over the bottom price belonged to him
and not to Evans, and he was besides to receive a trade dis-

count (improperly called a commission) of five per cent.
and a special discount for anticipated payments.    Every
obligation and disadvantage was on Evans.    In other words
the arrangement amounted to this :    Benjamin carried on
business as he pleased for his own account and for his ex-
clusive benefit on Evans' capital.    While he was, as above
said, under no obligation to buy or order, or to do anything
else, Evans was compelled (according to the arrangement)
to fill his orders when Benjamin saw fit to send them.
Suppose Benjamin had sent in no orders, what redress
would Evans have had ?    For what would he have sued
Benjamin ?    What damage could he have recovered ?    Ben-
jamin could have been guilty of no breach, for he had not
undertaken to do anything.    The arrangement was clearly
not a contract, and had no binding legal force.    *B. & O.
R. R. Co.* v. *Potomac Canal Co.*, 51 Md. 343.    But, says
Benjamin, this arrangement was entered into, because
Evans would not trust the parties to whom Benjamin was
selling.    Whether this was so or not is immaterial, for this
alleged agreement, and not the reasons for making it, is
what we are to deal with.    Even could these reasons be
considered, the arrangement would still be void for the rea-
sons above given.    Benjamin claims further, that whilst the
agreement was obnoxious to all the objections we have
made, it is now an executed contract, and he is, therefore,
entitled to recover.    Assuming that his legal contention is
correct, viz : that to the extent that the contract was exe-
cuted, he could recover, that would not avail him.    The
only part that was executed was the orders he (Benjamin)
sent Evans, but no claim is made on that account, because
for these, full settlement has been made.    Benjamin's pres-
ent claim is for damages, for Evans selling to parties in the
territory allotted to him, not for commissions on orders that
he (Benjamin) had sent.

2. *Because the alleged agreements were in unlimited, or if
not unlimited, in too general and unreasonable restraint of
trade, and, therefore, wholly void.*    The alleged agreement

of December, 1885 (and for all practical purposes that of September, 1894, was the same), limited Evans' sales to people in Baltimore, and his right to consign to one party in New Orleans. It cut him off from every other market in the world, without imposing on Benjamin any obligation to take the whole or any part of Evans' output. Such a restraint of trade is plainly against public policy. This case must be distinguished from the case where one agrees to buy the entire output of another, which latter would involve no question of restraint of trade at all.

3. Because the claim is for speculative damages. The alleged agreement of December, 1885, did not undertake to give Benjamin five per cent. on all sales made by Evans in the prohibited territory, but only five per cent. on all orders Benjamin himself gave. Assuming that that agreement was a valid contract, Benjamin could only claim the damages he could prove he suffered by Evans selling goods to parties in the territory set apart to Benjamin. What the damage was, it is impossible for a Court or a jury to decide. Benjamin might not have been able or might have refused to sell that trade ; nor is there any way of ascertaining whether he would have sold at the prices Evans got. *Lanahan* v. *Heaver*, 79 Md. 414. Under the alleged agreement of September 25th, 1894, it is equally difficult to understand how any claim for commission can be sustained. Assuming that, after that date, Evans was as Benjamin contends, still to be restricted to certain territory, there could be no claim except one for damages for violating his agreement by selling in the prohibited territory, which is necessarily speculative. There was no agreement that Benjamin should have five per cent. on all such sales by Evans. Evans agreed to allow Benjamin, on his *orders* for his (Evans') *goods*, a commission of five per cent. below *the lowest price and terms at which he (Evans)* " *will sell any other parties except* C. A. Conklin Manufacturing Company of Atlanta, Ga., and Butler Bros. of New York and Chicago." Instead of asking, on his own sales, " a commis-

sion of five per cent. below the lowest price " at which Evans sold to other parties than Conklin and Butler, Benjamin asks five per cent. on Evans' sales. He has clearly no such right under the alleged agreement.

4. But even if the claim were capable of ascertainment it would not be entitled to participate in the distribution of the funds in the hands of the trustees, as the damages are unliquidated. A claim for unliquidated damages is not provable against an assigned estate in the hands of an assignee, and especially not under the deed in this case, as it provides for the payment of only " *debts due and owing* " by Evans. As was said by the Court below, " There was no provision in the agreement of September 25, 1894, by which any penalty was stipulated as the measure of violation ; it was not the case of a lease where there was the stipulated amount in the nature of rent, as was the case of *Sweatman's Appeal*, 150 Pa. St. 369." *In re Adams*, 12 Daly, 454, 15 Abbott's N. C. 61; *Burrill on Assignments* (6th ed.), p. 531; *Blackstone's Commentaries*, Bk. III, page 154.

5. The books of Evans and the entries therein are inadmissible as against these appellees, and as there is no other evidence as to the claims for commissions, it must be disallowed for want of proof.

6. The claims for commissions on sales made more than three years before the dates of the filing of said claims by Benjamin, viz., January and February, 1897, are barred by limitations. *Hall* v. *Ridgely*, 33 Md. 310.

II. *As to the Merchandise or Rebate Account.* The claim under this head was properly disallowed. The whole of it is based upon the letter of September 25, 1894, which is as follows : " I hereby agree, after this date, to allow you on your orders for my goods, a commission of five per cent. below the lowest price, and terms at which I will sell any other parties except C. A. Conklin Manufacturing Co., of Atlanta, Georgia, and Butler Brothers, of New York and Chicago. I agree that the prices and terms of these

two parties shall not in any case net lower than the prices to you with the commission off. This arrangement to continue for one year from date, and to be terminable thereafter upon three months' notice."

As above set forth in the statement of this brief, the " merchandise or rebate account" is a claim for the difference between the price at which Evans sold a certain bill of goods to C. A. Conklin Manufacturing Co., of Atlanta, Georgia, on May 25, 1895, and the prices to Benjamin for goods sold him by Evans at various times after that date up to April, 1896, in alleged violation of the terms of the letter of September 25, 1894. This agreement is void, for the reasons heretofore assigned under head I of this brief. But even if the contract were a valid one, there is no ground upon which it could be maintained. Evans agreed in the letter of September 25, 1894, to sell goods to Benjamin at 5 per cent. below the lowest price to any other party except Conklin and Butler, and that the prices to those two should not net lower than the prices to Benjamin, with the commission off. It was not agreed that Benjamin should receive 5 per cent. off of the price at which the goods were sold to Conklin and Butler, but simply that the prices to Conklin and Butler should not net lower than to him (Benjamin), with the commission off. This is clearly established by the fact that in the first part of the letter Benjamin is allowed on all his orders 5 per cent. less than the lowest prices to others than Conklin and Butler, whilst Evans simply agrees, so far as Conklin and Butler are concerned, that sales to them should not net less. A violation of this provision did not entitle Benjamin to the difference between the sales to him and Conklin and Butler. The question is simply, did Benjamin suffer any damages thereby, and if so, how much. That of course is wildly speculative, and even if it were not, there is not the slightest evidence in the record that Benjamin suffered any damage, nor any evidence from which any loss could be proven.

McSHERRY, C. J., delivered the opinion of the Court.

The questions presented on the record now before us arise out of the following facts : Henry Evans, Jr., was a manufacturer of tinware in Baltimore, and George P. Benjamin, of New York, was a general agent for the sale of various kinds of merchandise. In December, eighteen hundred and eighty-five, these two parties entered into an agreement which is embodied in a letter from Benjamin to Evans, and which, in substance, provided (first), that all goods manufactured by Evans were to be sold through Benjamin, except such as Evans might himself sell in Baltimore City or might deliver to a designated customer in New Orleans ; (secondly), that all goods were to be shipped upon Benjamin's orders and were to be billed to him at bottom prices on sixty days time, such bills to be subject to a commission of five per cent., and to certain additional discounts for cash ; (thirdly), that all orders and inquiries as to prices from parties outside of Baltimore were to be referred to Benjamin, and that all acknowledgements of orders, replies and quotations were to be made by him. It was further provided that the agreement could be terminated at any time by either party on giving three months notice. This arrangement continued in force until September, eighteen hundred and ninety-four, when it was modified. By the modified agreement Evans stipulated to allow Benjamin on all of Benjamin's orders for Evans' goods a commission of five per cent. " below the lowest price and terms at which I will sell any other parties, excepting C. A. Conklin Manufacturing Company of Atlanta, Georgia, and Butler Brothers of New York and Chicago." And Evans further agreed that the prices and terms to these two parties (Conklin and Butler) should not in any case net lower than the prices to Benjamin with the commissions off. This arrangement was to continue for one year and to be terminable thereafter upon three months' notice. Under the original and the modified agreements, which remained in force until April the twenty-sixth, eighteen hundred and ninety-six, a large number of transactions

and dealings occurred that have all been adjusted and closed.
In the latter part of May, eighteen hundred and ninety-six,
Evans becoming embarrassed financially, executed a deed
of trust for the benefit of his creditors, appropriating all his
assets to the payment of all the "*debts*" due and owing by
him.   Benjamin claims to be a creditor of Evans and the
accounts which he has filed are designated " merchandise "
account and " commission " account.   In the merchandise
account he demands, under the agreement of September,
eighteen hundred and ninety-four, on purchases made by
him in 1895 and in 1896, the several sums paid by him in
excess of the prices charged by Evans, during the same
period, to C. A. Conklin for similar merchandise.   The
account is made up by deducting from the aggregate of the
prices as invoiced to Benjamin and as diminished by the
allowance of commissions, discounts and freight charges,
the amount which would have been chargeable had the
same discounts and deductions been allowed to Benjamin
that were given to Conklin during the same period, and the
difference, after being lessened by a credit, is the sum of
three thousand and five hundred dollars and fifty-one cents ;
and this is claimed as due on the merchandise account.   The
commissions account consists of a demand for nine thou-
sand two hundred and sixty dollars and ninety-six cents for
commissions on sales made by Evans himself within the ter-
ritory in which Benjamin insists that he alone had a right,
under the original and modified agreements, to make sale of
Evans' goods.   Other creditors of Evans filed objections to
the allowance of these two claims preferred by Benjamin ;
and after testimony had been taken and the objections had
been heard and considered by Circuit Court No. 2, both
claims were disallowed and rejected.   Thereupon Benjamin
brought the record by appeal into this Court for a review
of that decision.

The objections interposed by the contesting creditors are
ten in number, but it is not deemed necessary to set them
forth with particularity.   They assail the validity of the

agreements of 1885 and 1894, as unilateral and without mutuality, and as in general restraint of trade; and they insist that there is no ascertained definite sum due thereunder which constitutes a *debt* in the sense that the term is used in the deed of trust, and they maintain that whatever may be claimed, if anything, must be in the form of unliquidated damages for a breach of the agreements; and that there has been no ascertainment of these damages and no evidence adduced to establish the amount or extent thereof.

It must be borne in mind throughout this discussion that the appellant's claims are not for compensation for labor or services actually performed—they do not represent the fruits of an executed contract, where nothing remains to be done but to pay money as a consideration for what has been performed by the other party—but the charges in the commission account are charges of commissions on sales Benjamin did *not* make; and they are claimed, not because they are appropriate or stipulated compensation for work really performed by him, but because Evans violated an agreement not to make sales of his own manufactured articles, except through the appellant, in the territory where these sales were effected. A mere glance at the contract of 1885—the substance of which we have already stated—at once reveals the fact that the obligations which it creates and the duties which it imposes are to be performed wholly by one of the parties to it. There is no reciprocal obligation or duty whatever on the other party. Benjamin did not purchase the entire or any portion of the out-put of Evans' factory; nor did he bind himself to sell or even to attempt to sell the wares and merchandise made by Evans. He literally undertook to do nothing on his part at all as respects the purchase or sale of Evans' commodities. Had he made no sales or sent no orders to Evans there would have been no breach of the contract by him, because he had made no stipulation to do either; and had he been sued for a failure to send in orders or to make sales, a defence that he was under no obligation to do the one or the

other would have been perfect, unanswerable and complete. Obviously, if this be so, the contract, except in so far as it has been executed and performed by Benjamin, is not binding on Evans, because it lacks the element of mutuality, which is a constituent essential to the validity of an agreement respecting such a subject as the parties purported to deal with. It is essential to the validity of every contract of this character that there should be a mutuality of obligation. A contract is not binding on one of the parties, unless it is binding on the other. *B. & O. R. R. Co.* v. *Potomac Coal Co.*, 51 Md. 343 ; 1 *Chitty Con.* (11 Am. ed.) 20, 21. Precisely the same want of mutuality affects in the same way the modification made of the original contract in September, eighteen hundred and ninety-four.

If the claim here made were for work actually done by Benjamin, Evans could not escape making payment, by setting up the defence that the contract was not enforceable. As said by this Court in *Equitable En. Ass.* v. *Fisher*, 71 Md. 430, " If one should say to a laborer, ' if you will work in my fields for a month I will pay you twenty dollars,' and the laborer should accordingly work that length of time, it would be impossible to say that he had not earned the money. And it could make no possible difference whether the offer of employment were in writing or by word of mouth. It would not be a contract until accepted and agreed to by the laborer ; but doing the work in pursuance of the proposal is as unequivocal an assent to it as could be imagined." In the case just cited the performance of the work was an acceptance of the proposal and whilst the mere proposal alone created no obligation to pay the money, the doing of the work constituted a clear acceptance of the proposal and fixed the liability of the party offering the proposal, to make the payment when the work was actually performed. But in the case at bar the claim is for commissions on sales *not* made, for work *not* done—and not even contracted to be made or done, and which the appellant was under neither an express nor an implied obligation to

make or to do. It differs widely from the case of *Balto.*
*Breweries Co.* v. *Callahan*, 82 Md. 106, in this, that there a
definite employment of the appellee as a salesman at a fixed
salary for a specified term existed, and though there were no
formal words imposing the obligation to discharge the duties
of a salesman, the necessary implication to that effect arose,
and this furnished a valid consideration for the correlative
promise to pay the salary. But in the case at bar there
was no employment of Benjamin as a salesman—he was
simply given a privilege in return for which he assumed,
neither expressly nor by implication, any corresponding ob-
ligation himself. The payment of a *salary* imports an obli-
gation to perform the duties for the due discharge of which
the salary is stipulated to be paid; and though there be no
express agreement to render the services their performance
as a consideration for the payment of the *salary* is neces-
sarily involved and implied.

But even if there were or could be any doubt that the
contract of 1885 and the modification of 1894 were invalid
for the want of mutuality, except in so far as they have been
executed; it is perfectly clear that, as respects the claim for
commissions, it is a claim, not for a subsisting *debt* that is
due, but for unliquidated and unascertained damages for the
breach of a contract on Evans' part not to sell within a cer-
tain defined territory. Evans bound himself not to sell his
own goods in a designated territory. He further agreed that
all goods sold in that territory should be shipped upon the
*order* of Benjamin and should be billed to him at bottom
prices, "*such* bills to be subject to a commission of five per
cent." Now, the commissions claimed under the original
agreement, are not commissions upon any order given or
upon any sale made by Benjamin, but are commissions on
sales made by Evans himself in violation of his agreement not
to sell at all within that territory. Under the modification
of the original agreement Evans stipulated to allow Benja-
min " on *your* orders for my goods a commission of five per
cent. below the lowest price and terms at which I will sell

any other parties excepting" Conklin, &c.  Here, again, the commissions are not upon orders given by Benjamin, but upon sales alleged to have been made by Evans in contravention of his agreement not to sell within the prescribed territory   Neither the agreement nor the modification stipulated to give Benjamin five per cent. commission on *all* sales made in the territory assigned to Benjamin, but only on sales made therein by Benjamin himself ; and though there is a prohibition against Evans selling at all in that territory, there is no term of the contract that allows to Benjamin a five per cent. commission upon sales that Evans might make in violation of the contract.   There is, consequently, under the agreement of the parties, no definite, fixed and ascertained sum prescribed to be paid by Evans to Benjamin, either as commissions upon or as compensation for sales wrongfully made by Evans, and as a result, if Benjamin has been injured by such wrong and if the contract is a valid one, he would have redress by an action for a breach of the contract.   The damages recoverable in such an action would not necessarily be the five per cent. now claimed ; but they would be such only as Benjamin might be able to show he sustained.   Whether he sustained any or not the record does not disclose.   If the sales made by Evans were sales that Benjamin could not or would not have made, then he may not have been damnified by Evans having made them.   But as the facts are now presented, to assume that he has been injuriously affected would be simply to substitute conjecture for proof. Commissions as such are not recoverable because they are not stipulated in the contract to be paid on sales *not* made by Benjamin.   If any sum be recoverable at all it would be such an amount as Benjamin has been injured by Evans' breach of contract in selling where he had agreed not to sell ; and there is no evidence whatever showing that he has sustained substantial damages, and far less is there any tending to indicate the amount that he might recover.   The whole claim for commissions under the contract is a claim for

which the contract makes no provision.   Without consider-
ing the other objections to the commissions account those
which we have just been discussing are quite sufficient to
exclude that account from participation in the distribution
of Evans' assets.

But little need be said in regard to the merchandise ac-
count.   That account is founded on the modified agree-
ment of September, eighteen hundred and ninety-four.
There is nothing in the letter of September the twenty-
fifth—and it is that letter which contains the terms of the
modification—to justify the inference that Benjamin was to
have, as a discount or as a commission, five per cent. off of
the price of the goods sold by Evans to Conklin ; nor does
Evans agree to pay to Benjamin the difference between the
prices at which he might sell to Conklin and those which
he might charge Benjamin.   He merely contracted with
Benjamin that the prices and terms to Conklin and to But-
ler should not, in any case, net lower than the prices to
Benjamin with the commission off.   In other words, he
stipulated not to sell to Conklin or to Butler at less than
he would sell to Benjamin.   He violated that agreement,
so the appellant alleges.   Assuming that he did, does that
fact give Benjamin a right to be refunded the sums that the
sales to Conklin did net lower than the prices to Benjamin ?
Or, does it give Benjamin a cause of action wherein he may
recover the damages he may have sustained by Evans'
breach of the contract ?   Evans' agreement was simply
that he would *not* sell to other parties at a less or lower
price than he charged Benjamin.   This was not an agree-
ment to sell the goods to Benjamin for the same price at
which Evans would sell similar merchandise to any one else.
Such a contract, if in other respects valid, would have en-
titled Benjamin to purchase from Evans at the same prices
that Evans charged others, and an overcharge would have
given Benjamin the right to claim a rebate to the extent of
the excess wrongfully exacted from him.   *Holtz* v. *Schmidt*,
59 N. Y. 255.   The contract itself would then have fur-

nished precisely the measure of the sum that Benjamin could have claimed to be repaid by Evans. But the contract actually made had no relation, in the provision now being considered, to the prices to be charged Benjamin for the goods purchased by him; but it simply placed a restriction on Evans by which he was prohibited from selling to others at a less rate than he might quote to Benjamin. This was a stipulation affecting in no way the price chargeable to Benjamin for goods bought by him; but it was designed to protect him against the consequences of an under-selling by Evans to other customers. A breach of that stipulation could not possibly, under the contract, change or lessen the prices which Benjamin agreed to pay; but it would, if the contract itself were binding, undoubtedly subject Evans to a liability for any injury occasioned to Benjamin by its non-observance. The breach, however, would not create a definite, ascertained debt. If the violation of the contract caused Benjamin no loss, there is nothing in the agreement that obliges Evans to refund to Benjamin the sum he charged the latter in excess of the prices he charged Conklin; because there is no term of the contract that binds Evans to sell to Benjamin at the same prices he might sell similar goods to Conklin, but only a restriction on Evans not to sell to Conklin at less than he might charge Benjamin. There is no evidence tending to show that Benjamin sustained any loss by Evans' alleged breach of agreement.

Both claims are for unliquidated damages that have not been reduced to a certain ascertained amount, and neither of them, in their present form, evidences a debt provable against the assets of Evans in the hands of his trustees.

As we agree to the result reached by the Court below, we shall, for the reasons we have assigned, affirm the order appealed from.

*Order affirmed with costs above and below.*

(Decided March 3rd, 1898).